JOHN E. FICKETT

*vs.*

LEWISTON, AUGUSTA AND WATERVILLE STREET RAILWAY.

Cumberland.  Opinion March 4, 1913.

*Collision.  Damages.  Duty of those managing cars.  Electric cars. Highway.  Injuries.  Looking.  Motor-man.  Negligence.  Teams.*

1.  The contention of the defendant that the injury was caused solely by the plaintiff because, before coming in contact with the car, having an opportunity to look both ways of the track, he did not do so, and that had he done so he could have avoided the accident, is not sustained by the decisions, either ancient or modern.

2. The duty of the defendant to the plaintiff in the situation in which the evidence shows the parties to have been at the time of the accident was to use all possible efforts by slackening the speed of the car or stopping it altogether to avoid injury.

3. Street railroads are granted very great privileges out of the public right and their treatment of the public must be reasonable in return.

4. For a street railway to run into a wagon from behind without special circumstances to justify it is evidence of negligence on the part of the street railway company.

5. A driver of a team is not bound to keep a lookout behind his team for a car.

6. If the motorman could have avoided the accident by the exercise of ordinary care and skill and failed to do so, the defendant is liable for injuries caused by that neglect.

On motion for new trial by defendant. Motion overruled.

This is an action on the case to recover damages alleged to have been received by the plaintiff on the 7th day of October, 1911, at Brunswick, occasioned by the negligence of a motorman in charge of and operating a certain express car belonging to the defendant. The plaintiff alleges that while he was driving on and along Main street in said Brunswick with his team consisting of two horses and a dump cart, said car, which was approaching him from the rear, ran into his team and caused the injury complained of. Plea, the general issue. The jury returned a verdict for the plaintiff for $2750, and the defendant filed a motion to set the verdict aside.

The case is stated in the opinion.

*Wheeler & Howe,* for plaintiff.

*Newell & Skelton,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

HALEY, J. This is an action on the case, brought to recover damages for injuries alleged to have been received by the plaintiff October 7, 1911, by reason of the negligence of a motorman in the employ of the defendant, while operating an express car of the defendant upon its street railway, in Brunswick. The case was tried at the April term of the Supreme Judicial Court at Portland, the jury returned a verdict for the plaintiff, and the case is before

this court upon a motion to set aside the verdict, as against law and evidence.

The plaintiff, on the seventh day of October, 1911, was driving a span of horses attached to a dump cart down Main street, Brunswick, on that part of the street known as Mill Hill. The railroad tracks of the defendant are located in said street, and a portion of the highway between the rails was used by teams passing up and down the street and hill. As the plaintiff was driving down the hill he turned to the right to pass a team coming up the hill, which brought him close to the defendant's track in the street. There were three other teams standing in the highway on the plaintiff's left hand side. After the plaintiff had turned to the right to avoid the passing team, he continued down the hill close to the defendant's track. The defendant's express car was following the plaintiff's team down the street, and the motorman had a plain view of the plaintiff's team for 350 feet before the accident, the last 20 feet of which at least the car was close to the cart, and following it down the hill, while the plaintiff's horses were walking. When near the bottom of the hill the car and the plaintiff's team collided, the plaintiff was thrown to the ground and received injuries for which he claims damages. The motorman testified he sounded his gong repeatedly, to warn the plaintiff to move away from the track. The plaintiff and his witnesses testified that they did not hear the gong. The only other dispute of fact in the case is, how did plaintiff's team and defendant's car collide?

The plaintiff claims that he did not know the defendant's car was behind him, and that he did not look back to see if a car was coming up behind him, but was looking ahead to see that no car approached him in front, and that the first he knew of the car in the rear was when the car struck the back of his cart, pushing forward and upward the pole between the heads of the horses, at which time he was thrown from his seat on the cart and received the injuries complained of.

The defendant claimed that the motorman had the car under perfect control, and the motorman so testified, and that the plaintiff was driving along with clearance enough, but that in swinging his horses away from the track, it brought the hind wheels of the cart against the side of the car, and that, by the noise or impact, the

horses became frightened, and the plaintiff slipped from the seat astride the tongue and received the injuries from which he is now suffering, and that the plaintiff should have looked for a car in the rear as well as in front.

The defendant, to prove its contention, relied upon the testimony of the motorman and a man in charge of the freight in the car, who did not see the accident but heard a scraping against the side of the car, and there were marks on the side of the car as if a wheel had scraped against it. This was attempted to be explained by the plaintiff, by testimony that there were other marks of a similar character on the car, and testimony that frequently when teams backed up to unload freight from the car, the wheels, in turning, made the same marks on the car that the witness testified were on the car.

The plaintiff relied upon his own testimony and that of two witnesses who saw the car and team, as testified to by the plaintiff, immediately before they came together, and when they heard the crash they looked and the team and car were in the same position, the team ahead of the car. Another witness also testified to practically the same thing. The defendant's motorman and the man in charge of the freight were impeached by two witnesses beside the plaintiff, who testified that both the expressman, called by some the conductor, and the motorman said, immediately after the accident, that the motorman thought he had room to go by and ran into the back of the team.

From the evidence the jury must have found either that the plaintiff's version was the true one, or that the motorman was guilty of negligence in attempting to pass the plaintiff's team when it was so dangerously near the railroad track that a slight turn of the horses would throw the plaintiff's cart against the car. Under either finding the defendant is liable.

The defendant contends that the injury was caused solely through the neglect of the plaintiff, in this; that before coming in contact with the car he had every opportunity to look both ways of the track, that he did not, and that, had he done so, he could have avoided the accident. This doctrine would authorize a motorman, who had his car under perfect control, to run it against any one who might be upon the track, and by his neglect to stop his car

when he could, to kill whoever might be upon the track. The rule contended for by the defendant is not sustained by the decisions, either ancient or modern.

The duty of the defendant to the plaintiff in the situation in which the evidence shows the parties to have been at the time of the accident, was clearly stated in *Flewelling* v. *Horse Railroad,* 89 Maine, 594, as follows: "That Street Railroads are granted very great privileges out of the public right, and their treatment of the public must be reasonable in return; so that when a person or team, through accident or misjudgment or for any cause, be caught in a position of any peril of coming in collision or close contact with the cars, it is the duty of those who are managing the cars, to use all possible effort, by slackening the speed of a car or stopping it altogether to avoid injury."

This decision is in accordance with decisions both ancient and modern. *Butterfield* v. *Forester,* 11 East., 61; *Davies* v. *Mann,* 10 M. & W., 545. "For a street railway to run into a wagon from behind without special circumstances to justify it is evidence of negligence or wilful wrong on the part of the street railway company." *Vincent* v. *Norton & Taunton St. Ry. Co.,* 180 Mass., 104.

"If the motorman did see or could have seen that the wheels were dangerously near the track and run into the wagon then the company would be liable." *Higgin* v. *Wilmington City Railway Co.,* 1 Marvel, (Del.) 353. A driver of a team is not bound to keep a lookout behind his team for a car. *Vincent* v. *Norton & Taunton St. Ry. Co.,* supra; *Devine* v. *Brooklyn H. R. Co.,* 34 App. Div., (N. Y.) 248; *Tenison* v. *Weadock,* 89 (Mich.) N. W., 703.

The motorman could have avoided the accident by the exercise of ordinary care and skill, having failed to do so, the defendant is liable for injuries caused by that neglect. *Excelsior Co.* v. *Railroad Co.,* 93 Maine, 70.

*Motion overruled.*